UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Christ's Household of Faith, Inc.,

Debtor.

BKY Case No. 15-34301

Chapter 11 Case

**NOTICE OF HEARING AND MOTION FOR ORDER
(I) GRANTING EXPEDITED RELIEF AND (II) AUTHORIZING MAINTENANCE
OF EXISTING BANK ACCOUNTS AND CHECK STOCK**

TO: The parties-in-interest as specified in Local Rule 9013-3(a)(2).

1. Christ's Household of Faith, Inc. (the "Debtor") moves the Court for the relief requested below and gives notice of hearing.

2. The Court will hold a hearing on this motion at **1:30 p.m.** on **December 10, 2015**, in Courtroom 2A, United States Courthouse, 316 North Robert Street, St. Paul, Minnesota.

3. Local Rule 9006-1(c) provides deadlines for responses to this motion. However, given the expedited nature of the relief sought, the Debtor does not object to written responses being served and filed immediately prior to the hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1. This is a core proceeding. The petition commencing this chapter 11 case was filed on December 4, 2015 ("the Filing Date"). The case is currently pending before this Court.

5. This motion arises under 11 U.S.C. §§ 105(a), 365(b), 1107, and 1108. This motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 through -3. Expedited

relief is requested pursuant to Bankruptcy Rule 9006(c) and Local Rule 9006-1(d). Notice of the hearing on this motion is provided pursuant to Bankruptcy Rule 2002(a) and Local Rules 9013-3 and 2002-1(b). The Debtor requests an order granting expedited relief and authorizing maintenance of existing bank accounts and check stock.

## BACKGROUND

### I. GENERAL BACKGROUND

6. On the Filing Date, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code ("the Bankruptcy Code"). The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. The Debtor is a non-profit entity organized under 501(d) of the Internal Revenue Code, and is one of a group of related entities that makes up an apostolic community (the "Community") in which individual members contribute their labor and services to support the community and its Christian mission.

8. The members make such contributions by participating in the business activities of various operating entities (the "Operating Entities") that are wholly-owned by the Debtor.

9. In addition to its general operations as the umbrella under which the Community and Operating Entities are run, the Debtor conducts an automotive business under the name North Star Services Auto ("NSSA") that manages a fleet of vehicles used by Community members and businesses.

10. Further general background information about the Debtor and this case and facts related to other first day motions is set forth in the Declaration of Mark R. Alleman in Support of First Day Motions.

## II. PREPETITION CASH MANAGEMENT PRACTICES

11. Before the Filing Date, the Debtor maintained two active bank accounts at Western Bank: a checking account used specifically for NSSA, and a separate checking account used for all other operations of the Debtor. These two accounts (together, "the Bank Accounts") are further described on <u>Exhibit A</u>.

12. Also at Western Bank are additional separate bank accounts for the Operating Entities (the "Non-Debtor Accounts"). Prior to the Filing Date, all the accounts were connected such that amounts from all accounts were regularly consolidated, then disbursed back out as expenses came due. Specifically, at the end of each business day, all funds in the Bank Accounts and Non-Debtor Accounts were swept into an account held in the name of, and managed by, North Star Services Management, LLC ("Management"), one of the Operating Entities. When an expense owed by the Debtor or an Operating Entity came due, the funds to pay the expense would either be drawn from the sweep account, or would be transferred from the sweep account to the applicable entity's account for payment of the expense. All such intra-entity transfers were recorded and reflected in the books and records of the Debtor and the Operating Entities.

13. Management also serves as the management company in connection with the Debtor's leases of space in its commercial property, so certain funds—such as rent payments—attributable to the Debtor would flow directly into Management's account. Again, such amounts would be tracked and booked.

14. All activity in the various accounts was recorded daily, then later verified through bank statement reconciliations and quarterly review performed by an independent accounting firm. In this way, intra-company obligations were recorded and tracked.

### III.  CHANGES TO CASH MANAGEMENT DUE TO BANKRUPTCY FILING

15. The Debtor continues to maintain the Bank Accounts. However, prior to the bankruptcy filing, the Debtor terminated the sweep function associated with the Bank Accounts. Thus, while the Non-Debtor Accounts continue to be swept and managed as they were prepetition, the Debtor's Bank Accounts are now separated from that system. As a result, funds that enter the Bank Accounts will remain there until distributed from those accounts by the Debtor, as and to the extent authorized in this case.

16. In addition, on and after the Filing Date, all revenue attributable to the Debtor—consisting solely or mainly of rent revenue from the Debtor's commercial property—will be deposited into the Bank Accounts, rather than into Management's account or any other account. If any such revenue is inadvertently deposited into an account other than the Bank Accounts, it will be transferred to the Bank Accounts.

### **RELIEF REQUESTED**

17. The United States Trustee has established operating guidelines for debtors in possession who operate their businesses in chapter 11. One such provision requires a debtor in possession to open new bank accounts and to close all existing bank accounts. This requirement, designed to provide a clear demarcation between pre- and post-petition claims and payments, helps to protect against the inadvertent payment of pre-petition claims by preventing banks from honoring checks drawn before the Filing Date.

18. The Debtor requests that the Court waive the requirement that the Bank Accounts be closed and new post-petition bank accounts be opened. The Debtor believes that opening new post-petition bank accounts will cause substantial disruption to the Debtor's operations, which would impair the Debtor's cash flow, and would require the attention of one or more of the

4

Debtor's principals, who are addressing many other bankruptcy and non-bankruptcy matters for the Debtor.

19. Maintenance of the Bank Accounts facilitates the Debtor's transition to postpetition operations. To avoid delays in the receipt of lease payments—the Debtor's main source of revenue—and to ensure a smooth transition into chapter 11, the Debtor should be permitted to continue to maintain the existing Bank Accounts. Otherwise, the closing of the Bank Accounts and the opening of new accounts will be disruptive and needlessly time consuming.

20. For the same reasons, the Debtor also seeks authorization to use existing check stock, before ordering replacement supplies that strictly comply with the requirements of the United States Trustee. Postpetition, the Debtor will begin with a check numbered at least 50 numbers higher than the number of the last check written prepetition.

21. The Debtor has taken steps to stop payment on all prepetition debt paid by checks that have not cleared the Bank Accounts. Additionally, the Debtor is reviewing its books and records to identify any payments made without authorization. To the extent necessary, the Debtor will commence actions against those parties receiving payments inadvertently under 11 U.S.C. § 549, or may seek additional relief from this Court.

22. In the ways described above, the United States Trustee's concerns of creating a clear line of demarcation between pre- and post-petition obligations can be addressed in this case without the necessity of closing the Bank Accounts or immediately requiring new check stock. These precautions will increase the ease of differentiating between pre- and post-petition payments and ensuring that no prepetition payments are honored except as specifically authorized by this Court.

23.     Subject to a prohibition against honoring prepetition checks without specific authorization of this Court, the Debtor requests that the Bank Accounts be deemed debtor-in-possession accounts and that the Debtor be authorized to maintain and continue the use of these accounts, and the related check stock (until replacement supplies are required) in the same manner and with the same account numbers, styles, and forms as those employed prepetition.

24.     If the relief requested herein is granted, the Debtor will not pay, and Western Bank will be directed not to pay, any checks drawn on the Bank Accounts prepetition other than as specifically authorized by this Court.

25.     Because provision of full notice of this motion would require the Debtor to either operate in contravention of the United States Trustee's operating guidelines or to open new bank accounts, and thus cause the disruption this motion seeks to avoid and render this motion moot, the Debtor requests an expedited hearing. The granting of this motion on an expedited basis will facilitate an orderly transition to chapter 11 by minimizing disruptions, enabling the Debtor to continue to make and generate timely accounting information, and allowing the Debtor to receive payments and make authorized payments without further interruption.

26.     Pursuant to Local Rule 9013-2(c), the Debtor gives notice that it may, if necessary, call Mark R. Alleman, the CFO of the Debtor, whose business address is 23 Empire Drive, St. Paul, Minnesota 55103, to testify regarding the facts set out in this Motion.

WHEREFORE, the Debtor requests entry of an order granting expedited relief, authorizing the maintenance of the existing Bank Accounts and continued use of existing check stock, and for such other and further relief as the Court deems proper.

Dated: December 7, 2015      */e/ Sarah M. Olson*
Ryan T. Murphy (#0311972)
Sarah M. Olson (#0390238)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: 612.492.7000
rmurphy@fredlaw.com
solson@fredlaw.com

PROPOSED ATTORNEYS FOR DEBTOR

57485245

7

## **VERIFICATION**

I, Mark R. Alleman, am the CFO of the Debtor, and declare under penalty of perjury that the facts set forth in the preceding motion, and the exhibit to the motion, are true and correct, according to the best of my knowledge, information, and belief.

Dated: December 7, 2015        Signed: _/s/ Mark R. Alleman_
                                       Mark R. Alleman

57485245

## **EXHIBIT A**

| Account | Bank | Account Number |
|---|---|---|
| Checking Account (NSSA) | Western Bank<br>PO Box 64689<br>St. Paul, MN 55164 | XXXX394 |
| Checking Account | Western Bank<br>PO Box 64689<br>St. Paul, MN 55164 | XXXX387 |

Case 15-34301    Doc 5    Filed 12/07/15    Entered 12/07/15 15:58:26    Desc Main
Document      Page 9 of 14

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Christ's Household of Faith, Inc.,

　　　　　Debtor.

BKY Case No. 15-34301

Chapter 11 Case

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER
(I) GRANTING EXPEDITED RELIEF AND (II) AUTHORIZING MAINTENANCE
OF EXISTING BANK ACCOUNTS AND CHECK STOCK**

　　　　Christ's Household of Faith, Inc. (the "Debtor") submits this memorandum in support of its Motion for Order (I) Granting Expedited Relief and (II) Authorizing Maintenance of Existing Bank Accounts and Check Stock (the "Motion"). The Debtor requests that the Court grant this relief because it will avoid delays in receiving funds and payment of postpetition obligations, and will ensure as smooth a transition as possible into chapter 11.

**BACKGROUND**

　　　　The supporting facts are set forth in the verified Motion. All capitalized terms have the meaning ascribed to them in the Motion.

**ARGUMENT**

**I.　CAUSE EXISTS FOR EXPEDITED RELIEF**

　　　　The Debtor requests expedited relief on the Motion. Local Rule 9006-1(b) provides that "moving documents shall be filed and served . . . not later than fourteen days before the hearing date." Local Rule 9006-1(e), however, provides that a court may reduce notice for cause. Here, cause exists to reduce notice of the hearing on this Motion. The relief sought herein is designed to ease the Debtor's transition to chapter 11 and minimize disruptions to the Debtor's business operations. If the Court does not grant expedited relief, the Debtor would be forced into an

untenable situation: either maintain the same Bank Accounts and disregard the United States Trustee's operating guidelines, or open new bank accounts, causing a disruption to the Debtor's business and requiring the attention of officers of the Debtor who are addressing many other bankruptcy and non-bankruptcy matters for the Debtor, and rendering the Motion moot. Given the Debtor's critical need to receive an order regarding this matter and to continue its operations uninterrupted, cause exists for expedited relief.

## II. THE DEBTOR SHOULD BE AUTHORIZED TO MAINTAIN ITS EXISTING BANK ACCOUNTS AND CHECK STOCK

Courts have the authority to waive the strict enforcement of bank account closing requirements imposed pursuant to the guidelines adopted by the office of the United States Trustee and that relief is routinely granted. *See, e.g., In re HEI, Inc.*, No. 15-4009 (Bankr. D. Minn. Jan. 5, 2015), ECF No. 9; *In re Bowles Sub Parcel D, LLC*, No. 11-44434 (Bankr. D. Minn. July 20, 2011), ECF No. 25; *In re Intrepid U.S.A., Inc.*, No. 04-40416 (Bankr. D. Minn. Feb. 19, 2004), ECF Nos. 65 & 122.

As detailed in the Motion, continued use of the Bank Accounts and existing check stock is important to ensure a smooth transition into chapter 11 and to aid in the Debtor's efforts to maintain the value of its operations and assets. Requiring the Debtor to open new bank accounts at this early and critical stage of the case would add additional administrative work and be disruptive to the Debtor's operations. Consequently, maintenance of the existing Bank Accounts and current check stock (until replacement supplies are needed) is in the best interest of all creditors and other parties in interest in these cases.

If granted the relief requested, the Debtor will not pay, and Western Bank will be directed not to pay, any prepetition checks except as allowed by order of this Court. The Debtor has already taken steps to stop payment on all prepetition debt paid by checks that have not cleared

the Bank Accounts and is reviewing its books and records to identify any payments made without authorization.  In addition, the Debtor will leave a conspicuous gap in the numbering sequence of the checks it uses so that the Debtor and Western Bank can easily discern the prepetition checks from those issued postpetition.  By this manner, the United States Trustee's concern regarding a clear demarcation between prepetition and postpetition payments can be enforced.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court grant the relief requested in the Motion.

Dated:  December 7, 2015                    */e/ Sarah M. Olson*
                                             Ryan T. Murphy (#0311972)
                                             Sarah M. Olson (#0390238)
                                             FREDRIKSON & BYRON, P.A.
                                             200 South Sixth Street, Suite 4000
                                             Minneapolis, MN  55402-1425
                                             Telephone:  612.492.7000
                                             rmurphy@fredlaw.com
                                             solson@fredlaw.com

                                             PROPOSED ATTORNEYS FOR DEBTOR

57504343

3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Christ's Household of Faith, Inc.,

Debtor.

BKY Case No. 15-34301

Chapter 11 Case

**ORDER (I) GRANTING EXPEDITED RELIEF AND (II) AUTHORIZING
MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK**

This matter came before the undersigned on the debtor's Motion for an Order (I) Granting Expedited Relief and (II) Authorizing Maintenance of Existing Bank Accounts and Check Stock. Appearances are noted on the record. For reasons stated orally and recorded in open court,

IT IS ORDERED:

1. The debtor's motion is granted, including the request for expedited relief.

2. The debtor is authorized to designate, maintain, and continue to use, with the same account numbers, the following bank accounts at Western Bank: (i) checking account with the account number ending in 394; and (ii) checking account with the account number ending in 387 (together, the "Bank Accounts").

3. The debtor is authorized to use, in their present form, checks and other documents related to the Bank Accounts; provided, however, that when the debtor orders additional check stock and related documents, such replacement supplies will comply with the requirements of the United States Trustee. To create a clear delineation between checks issued prepetition and checks issued postpetition, the first check issued by the debtor postpetition shall be a check numbered at least 50 numbers higher than the number of the last check written prepetition. The

debtor is authorized to treat the Bank Accounts for all purposes as accounts of the debtor as debtor-in-possession.

4.      Western Bank is authorized and directed to continue to service and administer each Bank Account as an account of the debtor as debtor-in-possession without interruption and in the usual and ordinary course.  Western Bank shall service and administer the Bank Accounts in compliance with the requirements set forth in 11 U.S.C. § 345.

5.      Western Bank is authorized and directed to receive, process, honor, and pay any and all checks and drafts drawn on the Bank Accounts after the filing date by the holders or makers thereof: provided, however, that Western Bank may not honor and pay any check drawn or used by the debtor before the filing date unless specifically authorized by order of this court. The debtor is further ordered to provide a list of any such checks or a category of such checks to be honored to Western Bank, which is authorized to rely thereon and shall have no liability to any party for relying on such information.

Dated:                                              _____
                                                    Gregory F. Kishel
                                                    Chief United States Bankruptcy Judge

57504634

2